## COLORADO INTERSTATE GAS CO. v. FEDERAL POWER COMMISSION.

### No. 10145.

United States Court of Appeals, Third Circuit.

Argued Oct. 9, 1950.

Decided Nov. 28, 1950.

Rehearing Denied Dec. 29, 1950.

William A. Dougherty and James Lawrence White, New York City, (Henry F. Lippitt II, New York City, Charles E. McGee, Washington, D. C., on the brief), for petitioner.

William S. Tarver, Washington, D. C., (Bradford Ross, General Counsel, Albert J. Feigen, and Louis C. Kaplan, all of Washington, D. C., on the brief), for respondent.

Edgar A. Stansfield, Denver, Colo., (Lee, Bryans, Kelly & Stansfield, Denver, Colo., on the brief), for Public Service Co. of Colorado.

Leland E. Modesitt, Denver, Colo., (J. Glenn Donaldson, Denver, Colo., on the brief), for City and County of Denver.

Louis Johnson, Colorado Springs, Colo., (F. T. Henry, Colorado Springs, Colo., on the brief), for City of Colorado Springs.

Before ALBERT LEE STEPHENS, MARIS and McLAUGHLIN, Circuit Judges.

MARIS, Circuit Judge.

Upon the petition of Colorado Interstate Gas Company this court is asked to review an order of the Federal Power Commission disallowing certain changes proposed by Colorado Interstate in the applicability provision of its FPC Gas Tariff, Original Volume No. 1, which tariff had been filed pursuant to the Commission's Order No. 144, issued October 30, 1948, amended November 17, 1948. Pursuant to an earlier order of the Commission, made in 1942 and affirmed in 1945,[1] Colorado Interstate had on October 1, 1945 filed supplements to its existing FPC rate schedules making the reductions in rates required by the Commission's order. These supplements, of which Supplement No. 7 to Rate Schedule FPC No. 1 may be regarded as typical, contained the following applicability clause: ."This rate schedule shall apply to all natural gas delivered by Colorado Interstate to the Buyer except such natural gas as Buyer may purchase from Colorado Interstate under Rate Schedules I-1 and I-2."

In the order which the Commission entered October 3, 1945 accepting these supplements for filing it provided that "The rates and charges contained in the new rate schedules * * * are to be effective * * * for all sales of natural gas in interstate commerce *for resale* for ultimate public consumption." (Emphasis supplied).

In FPC Gas Tariff, Original Volume No. 1, which it had filed May 2, 1949, the tariff involved in the present controversy, Colorado Interstate on June 24, 1949 included the following applicability clause in Rate Schedules G-1 and P-1, First Revised Sheets Nos. 4 and 7:[2]

"This rate schedule shall apply to all natural gas delivered by Colorado Interstate to the Buyer for resale except such natural gas as Buyer may purchase from Colorado Interstate under Rate Schedules I-1 and I-2. It shall in no way be applicable to such natural gas as

1. Colorado Interstate Gas Co. v. Federal Power Comm., 10 Cir., 1944, 142 F.2d 943, affirmed 1945, 324 U.S. 581, 65 S. Ct. 829, 89 L.Ed. 1206.

2. Originally sheets Nos. 4 and 7 contained the following applicability clause:

"This rate schedule shall apply to all natural gas delivered by Colorado Interstate to the Buyer: (1) for resale except such natural gas as Buyer may purchase from Colorado Interstate under Rate Schedules I-1 and I-2; (2) which constitutes Buyer's lost and unaccounted for natural gas; and (3) which Buyer consumes in rendering natural gas service to its customers."

The Commission suspended these applicability clauses and subsequently, by the order of November 2, 1949 here under review, disallowed them and directed Colorado Interstate to file Second Revised Sheets Nos. 4 and 7 to its FPC Gas Tariff, Original Volume No. 1, containing applicability clauses as follows: "This rate schedule shall apply to all natural gas delivered by Colorado Interstate to the Buyer except such natural gas as Buyer may purchase from Colorado Interstate under Rate Schedules I-1 and I-2." Colorado Interstate's application for rehearing having been denied the present petition for review was filed.

We have described the action taken by the Commission which is here under review but we have not been given the benefit of the reasons which motivated the Commission in taking that action. The opinion filed in the proceeding before the Commission was concurred in by only two of the four participating Commissioners and accordingly cannot be taken as stating the views of the Commission but merely those of the two Commissioners who signed it. The third Commissioner who concurred in the order under review did not file an opinion or otherwise state his views while the remaining Commissioner filed a dissenting opinion.

In this court the argument has taken a wide range. It appears that Colorado Interstate sells natural gas to Public Service Company of Colorado, a local public utility in the Denver area, and to the City of Colorado Springs. While in each case most of the gas thus sold is resold by the buyers to local consumers, some of it is consumed by the buyers in their own boiler plants for the generation of electricity and, in the case of Public Service, steam for resale to consumers. The gas thus sold is delivered by Colorado Interstate into the mains of the buyers at the city borders, the gas which is ultimately resold being commingled in delivery with that which is ultimately consumed by the buyers in their own boiler plants. Both parties have discussed at length the question whether the gas thus sold by Colorado Interstate to Public Service and Colorado Springs which is subsequently consumed by the buyers in their own boiler plants is subject to regulation by the Federal Power Commission. It is clear that they would both like to have this court decide that question. We are satisfied, however, that the question is not presented by the record now before us and that we are not called upon to decide it. .

The question which the record does present is a much narrower one, namely, whether the Commission may disallow the filing by Colorado Interstate of a tariff applicable only to natural gas delivered to a buyer *for resale* and may require it to make its filed tariff applicable to all natural gas delivered to the buyer, whether or not for resale. For this, and this alone, is what the Commission has attempted to do by the order now under review. In order to answer this question we turn to Section 1(b) of the Natural Gas Act,[3] which provides as follows: "(b) The provisions of this Act shall apply to the transportation of natural gas in interstate commerce, to the sale in interstate com-

---

Buyer may purchase for its own use and consumption."

These original sheets were offered for filing on May 2, 1949 and were suspended by the Commission by order of May 27, 1949. On June 24, 1949 First Revised Sheets Nos. 4 and 7 containing the applicability clause set out in the text were filed in substitution for the Original Sheets Nos. 4 and 7 in order to meet certain objections of Colorado Interstate's customers. They in turn were suspended by the Commission's order of July 20, 1949.

3. 15 U.S.C.A. § 717(b).

merce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial, or any other use, and to natural-gas companies engaged in such transportation or sale, but shall not apply to any other transportation or sale of natural gas or to the local distribution of natural gas or to the facilities used for such distribution or to the production or gathering of natural gas."

It will be seen that the significant language is: "The provisions of this Act shall apply * * * to the sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial, or any other use, * * * but shall not apply to any other * * * sale of natural gas." This language has been the subject of authoritative construction by the Supreme Court in Panhandle Pipe Line Co. v. Public Service Comm., 1947, 332 U.S. 507, 68 S.Ct. 190, 92 L.Ed. 128. In the opinion of the court in that case Justice Rutledge said, 332 U.S. at pages 516, 517, 68 S.Ct. at page 195:

"This section determines the Act's coverage and does so in the light of the situation existing at the time. Three things and three only Congress drew within its own regulatory power, delegated by the Act to its agent, the Federal Power Commission. These were: (1) the transportation of natural gas in interstate commerce; (2) its sale in interstate commerce for resale; and (3) natural gas companies engaged in such transportation or sale.

"The omission of any reference to other sales, that is, to direct sales for consumptive use, in the affirmative declaration of coverage was not inadvertent. It was deliberate. For Congress made sure its intent could not be mistaken by adding the explicit prohibition that the Act 'shall not apply to any other * * * sale * * *.' (Emphasis added.) Those words plainly mean that the Act shall not apply to any sales other than sales 'for resale for ultimate public consumption for domestic, commercial, industrial, or any other use.' Direct sales for consumptive use of whatever sort were excluded.

"The line of the statute was thus clear and complete. It cut sharply and cleanly between sales for resale and direct sales for consumptive uses. No exceptions were made in either category for particular uses, quantities or otherwise. And the line drawn was that one at which the decisions had arrived in distributing regulatory power before the Act was passed."

Nothing need be added to this clear statement of the coverage of the act. When applied to the problem before us it means that the power of the Commission to regulate the sale of natural gas by Colorado Interstate extends only to sales to buyers for resale and not to sales to buyers for their own consumption. That being the extent of the authority which Congress has conferred upon the Commission that body is without authority to compel Colorado Interstate to make its gas tariff applicable to any sales other than those for resale. It is beyond the power of the Commission to require a natural gas company within its jurisdiction to make its tariff applicable to sales which are not within the regulatory power of the Commission for this would be in effect to regulate such sales. Indeed the Commission itself recognized this in 1945 when in accepting Colorado Interstate's earlier tariff changes for filing it specified that they were to be effective only for sales "for resale for ultimate public consumption". It necessarily follows that the applicability clauses of Colorado Interstate's FPC Gas Tariff, Original Volume No. 1, which the Commission disallowed should have been allowed since they did no more than limit the applicability of the tariff to those sales which were within the Commission's regulatory jurisdiction.

As we have said, on this record we do not reach the question whether Colorado Interstate's sales of gas to Public Service and Colorado Springs for consumption in the boiler plants of the latter are in fact sales for resale and, therefore, within the Commission's jurisdiction either because the gas thus consumed is commingled at the time of delivery with other gas actually destined for resale or for any other

reason. The decision of that question, however, will not be affected by the approval of the applicability clauses of Colorado Interstate's tariff in the form proposed by it. For those applicability clauses will merely limit the scope of the tariff to sales of gas for resale and unless the gas in question can be determined to be in that category it obviously does not come within the coverage of the Act as defined by Section 1(b) and, therefore, could not in any case be within the regulatory authority of the Commission. To limit the tariff by the language of the act cannot prejudice either party to this particular controversy, since both are bound by the terms of the act. If, however, the Commission's position should be sustained Colorado Interstate would be seriously prejudiced since it would be bound by a tariff which covered its sales of gas whether or not they were for resale and, therefore, might preclude it from even raising the question.

Public Service Company of Colorado, the City and County of Denver and the City of Colorado Springs have intervened and urge, inter alia, that the jurisdiction of the Federal Power Commission should be sustained in order that the sales of gas to Public Service and Colorado Springs for consumption in their own boilers may be subject to its regulation. As we have already pointed out, it is beyond the power of the Commission to regulate the sales of this gas if in fact they must be regarded as sales for consumption and not for resale. If, however, this should be found in a proper proceeding to be the case the intervenors are not without protection. In that situation the State of Colorado has full power under the act and the decisions to regulate such direct sales of natural gas for consumption within its borders.[4]

The orders of the Federal Power Commission issued July 20, 1949 and November 2, 1949 will be set aside insofar as they suspended and disallowed First Revised Sheets Nos. 4 and 7 of Colorado Interstate Gas Company's FPC Gas Tariff, Original Volume No. 1, and insofar as they directed Colorado Interstate Gas Company to file Second Revised Sheets Nos. 4 and 7 to the said tariff.

---

4. See Panhandle Pipe Line Co. v. Public Service Comm., 1947, 332 U.S. 507, 68 S.Ct. 190, 92 L.Ed. 128.