**FEDERAL POWER COMMISSION v. ARI-
ZONA EDISON CO., Inc.**

No. 12941.

United States Court of Appeals
Ninth Circuit.

Feb. 12, 1952.

---

Bradford Ross, Gen. Counsel, Howard E.
Wahrenbrock, Asst. Gen. Counsel, A. R.
Spalter and Sherman S. Poland, Attorneys,
Federal Power Commission, all of Wash-
ington, D. C., (Leonard Eesley, Washing-
ton, D. C., of counsel), for appellant.

Donald C. McCreery, Denver, Colo.,
Snell & Wilmer, James A. Walsh, Phoenix,
Ariz., for appellee.

Before DENMAN, Chief Judge, and
ORR and POPE, Circuit Judges.

ORR, Circuit Judge.

The Federal Power Commission, herein-
after referred to as the Commission,
brought this action in the United States
District Court for the District of Arizona
pursuant to §§ 314(a, b) and 317 of the
Federal Power Act, 16 U.S.C.A. §§ 825m
(a, b) and 825p, to secure enforcement of an
order finding the Arizona Edison Company
subject to its jurisdiction and directing said
Company to comply with outstanding regu-

lations of the Commission. In particular, the order directed compliance with the Commission's uniform accounting requirements and further required certain specific accounting entries on the basis of findings made by the Commission. The Company's motion to dismiss the complaint was granted by the trial court on the ground that the complaint on its face disclosed that the Commission lacked jurisdiction to enter the order sought to be enforced.

The complaint recites that a proceeding was instituted by the Commission to determine whether the Company was within its jurisdiction as a "public utility" as defined in the Act and as such subject to various regulations and accounting orders; that said proceeding culminated in a Commission order finding the Company subject to the Commission's jurisdiction; that the Company is violating the terms of the order, and concludes with a request for injunctive relief. Incorporated as a part of the complaint, as the foundation for the enforcement proceeding, are the "Findings and Order Determining Status and Providing for Disposition of Plant Acquisition Adjustment" issued as a result of the original Commission proceeding. The Company makes the primary contention that the Commission's order is invalid on its face in that the findings of basic fact do not support the ultimate jurisdictional conclusion of "public utility" under a proper construction of the statute.

In effect, the basic facts are as follows: The Arizona Edison Company, Inc., hereinafter referred to as the Company, is an Arizona corporation owning and operating eight separate electric systems wholly within the state of Arizona. Three of these systems, known as Maricopa, Coolidge-

Florence, and Yuma, were involved in the proceeding before the Commission. These three systems supply only ultimate consumers in their respective areas and all receive electric energy generated by the United States Bureau of Reclamation, hereinafter referred to as the Bureau, in California at Parker Dam and Siphon Drop Generating Station, and in Nevada at Hoover Dam. The out of state energy is transmitted across the Arizona border and brought within the state by the Bureau and United States Indian Service high voltage lines. Delivery is made to the Company almost entirely at substations owned by the government agencies except in one instance where delivery is made at a Company substation. The energy is received at relatively high voltages and the Company owns high voltage lines which serve to transmit the energy, without subdivision, from the point of delivery to Company owned substations which step down the voltage to place the energy in consumable condition. These lines include a 69,000 volt line 9.6 miles long, a 12,000 volt line 11.5 miles long, and a 34,500 volt line 12 miles long extending to a substation in one city, thence seven miles farther to a substation in an unincorporated small community. No customers are served from these lines; they are used exclusively to transmit the energy in bulk to the step-down substations. From the substations radiate lines of relatively low voltage (usually 4,000 volts) which are used to serve customers. The Commission asserts Company ownership and operation of the lines for the transmission of the energy in bulk to the substations as the jurisdictional basis for its order.

The Federal Power Act [1] defines "public utility" as "any person who owns or oper-

1. Federal Power Act, § 201, 16 U.S.C.A. § 824.
    "(b) The provisions of this part shall apply to the transmission of electric energy in interstate commerce and to the sale of electric energy at wholesale in interstate commerce, but shall not apply to any other sale of electric energy or deprive a state or state commission of its lawful authority now exercised over the exportation of hydroelectric energy which is transmitted across a state line. The Commission shall have jurisdiction over all facilities for such transmission or sale of electric energy, but shall not have jurisdiction, except as specifically provided in this part and the part next following, over facilities used for the generation of electric energy or over facilities used in local distribution or only for the transmission of electric energy in intrastate commerce, or over facilities for the transmission of electric energy consumed wholly by the transmitter.

ates facilities subject to the jurisdiction of the Commission under this Part." § 201(e) It grants the Commission jurisdiction over "all facilities" for the transmission of electric energy in interstate commerce and for the "sale of electric energy at wholesale in interstate commerce." § 201(b) The statute further provides that "electric energy shall be held to be transmitted in interstate commerce if transmitted from a state and consumed at any point outside thereof". § 201(c) But the Commission "shall not have jurisdiction, except as specifically provided in this part and the part next following, over facilities used * * * in local distribution or only for the transmission of electric energy in intrastate commerce". § 201(b) Our problem is to determine whether the lines owned by the Company and used to transmit energy in bulk were properly classified by the Commission as used in the "transmission of energy in interstate commerce" and not engaged solely in "local distribution or only for the transmission of electric energy in intrastate commerce".

The Company points out that all its facilities are located within Arizona; that all its customers are in Arizona; that it makes no sales for resale from the facilities in question and, hence, it follows that functionally the Company commences the process of serving its customers the moment the energy enters its lines. In addition, all its revenues are derived from sales of energy to customers rather than from the function of transmission as such. The Company also relies on the policy declaration in § 201(a) of the Act that the federal regulation is "to extend only to those matters which are not subject to regulation by the states" and declares that as an intrastate enterprise it is fully subject to Arizona regulation. To support its contention that its activities are "local distribution" and, hence, outside the jurisdiction of the Commission, the Company cites the case of Connecticut Light & Power Co. v. Federal Power Commission, 1945, 324 U.S. 515, 65 S.Ct. 749, 89 L.Ed. 1150. The Commission argues that "local distribution" does not begin until the transmission in bulk at high voltages has ended and subdivision of the energy for delivery to customers at the lower consumable voltages begins. It points out that the Company's lines receive the out of state energy and transmit it without break or diminution to the substations where the subdivision process commences. Until the energy reaches the substation the Company is simply completing the process of interstate transmission.[2] The Commission relies on Federal Power Commission v. East Ohio Gas Co., 1950, 338 U.S. 464, 70 S.Ct. 266, 94 L.Ed. 268, to justify its conclusion.

■ The East Ohio case involved facilities located wholly within Ohio for the transportation of natural gas. The East Ohio Company receives out of state natural gas at high pressure and transports the gas through its own high pressure lines for over 100 miles to its local distribution systems where the eventual reduction in pressure takes place. The East Ohio Company makes no sales for resale but simply conveys the gas to the ultimate consumer. The Natural Gas Act, § 1(b), applies to the "transportation of natural gas in interstate commerce" but not to the "local distribution of natural gas or to the facilities used

---

"(c) For the purpose of this part, electric energy shall be held to be transmitted in interstate commerce if transmitted from a state and consumed at any point outside thereof; but only insofar as such transmission takes place within the United States.

&ast; &ast; &ast; &ast; &ast;

"(e) The term 'public utility' when used in this part or in the part next following means any person who owns or operates facilities subject to the jurisdiction of the Commission under this part."

2. The Company contended that since the energy was actually transmitted across the state boundary by agencies of the federal Government it was not transmitted in interstate commerce because, (a) the federal Government cannot engage in commerce, and, (b) § 201(f) of the Act provides that its provisions shall not apply to the United States or any of its agencies. In our opinion the Act's definition does not make the presence of interstate commerce depend upon the character of ownership of connecting lines.

for such distribution". 15 U.S.C.A. § 717(b). The Supreme Court held that "* * * what Congress must have meant by 'facilities' for 'local distribution' was equipment for distributing gas among consumers within a particular local community, not the high-pressure pipe lines transporting the gas to the local mains", and, further, that "* * * the word 'transportation' like the phrase 'interstate commerce' aptly describes the movements of gas in East Ohio's high-pressure pipe lines." 338 U.S. 464, 469–470, 70 S.Ct. 269. To us the East Ohio case seems strikingly similar, both factually and in statutory framework, to the instant case. The actual facilities involved are analogous, and the key statutory language is almost identical; compare "transportation of natural gas in interstate commerce" with "transmission of electric energy in interstate commerce" and "local distribution of natural gas or to the facilities used for such distribution", with "facilities used in local distribution". We read the East Ohio case as requiring approval of the Commission's finding of coverage here. What we deem superficial differences between the two situations may be pointed out. Here we are dealing with electric energy and not with natural gas. The policy declaration section of the Gas Act does not contain the admonition of the Power Act that "* * * such Federal regulation, however, [is] to extend only to those matters which are not subject to regulation by the states." § 201(a) But the legislative history of the Gas Act indicates a desire by Congress to regulate only those activities which were not subject to regulation by the states, and not to impinge upon areas open to the exercise of state powers.[3] Similarly, the legislative history of the Power Act shows that the congressional purpose in its passage was to regulate areas not open to state control.[4] The breadth of the gap in state powers of regulation under prior Supreme Court decisions and, hence, a delineation of the congressional purpose, may have been subject to reasonable dispute prior to the East Ohio case. However, in the East Ohio case the Court undertook to analyze its own prior decisions and, thus, to define the extent of the void in state power which must have been within the contemplation of Congress at the time of the passage of the Gas Act. The gap found in state power over the natural gas industry would apply equally to the electric energy industry due to the great similarities between the two processes, at least for the purposes of and in the sense defined in the East Ohio case.[5]

▇ The Company, however, strongly urges that the Connecticut Light & Power case, supra, is controlling. It will be noted that in the Connecticut Light & Power case the Supreme Court did not hold the Commission's finding of "public utility" to be error; instead, it remanded the case to the Commission for the making of appropriate jurisdictional findings in the light of the statutory construction adopted. See 324 U.S. at page 532, 65 S.Ct. at page 757. Such findings were made by the Commission in the present case.[6] Language can be found in the Connecticut Light & Power

3. For detailed citations see the majority and dissenting opinions in Federal Power Comm. v. East Ohio Gas Co., 1950, 338 U.S. 464, 70 S.Ct. 266, 94 L.Ed. 268.

4. See the resumé of the legislative history of the Power Act in Jersey Central Power & Light Co. v. Federal Power Comm., 3 Cir., 1942, 129 F.2d 183, 192–194, affirmed, 1943, 319 U.S. 61, 63 S.Ct. 953, 87 L.Ed. 1258.

5. Cf. discussion in the East Ohio case, 338 U.S. 464, 470, footnote 10, 70 S.Ct. 266. Some commentators accord virtually interchangeable treatment to gas and electric cases. Howard, Gas and Electricity in Interstate Commerce, 18 Minn.

L.Rev. 611 (1934); Powell, Physics and Law—Commerce in Gas and Electricity, 58 Harv.L.Rev. 1072 (1945).

6. For example, the Commission expressly found that "(13) Arizona Edison owns and operates facilities for the transmission of electric energy in interstate commerce which is transmitted from the state in which it is generated and consumed outside thereof, which facilities are in addition to and do not include facilities used for the generation of electric energy, or facilities used in local distribution or only for the transmission of electric energy in intrastate commerce * * *."

opinion favorable to the Company's position, 324 U.S. at page 534, 65 S.Ct. at page 758, but it must be remembered that that case was concerned primarily with the actual facilities used to step down the energy. The energy was delivered by an independent company at high voltage directly to.the Connecticut Light & Power Company's substation in the city of Bristol. At the substation the energy was subdivided and transmitted over many circuits to consumers in and around Bristol. Thus, the Connecticut case is distinguishable in an important factual respect. In the instant case the asserted jurisdictional foundation is the high voltage lines which transmit the energy in bulk to the substation where the step down and subdivision are effected, and not the step down facilities themselves. The East Ohio case was decided subsequent in time to the Connecticut Light & Power case. We hold, on the basis of the findings made, that the Commission properly concluded that the Arizona Edison Company should be classified as a "public utility" within the meaning of the Power Act.

The original proceeding before the Commission was initiated by an "Order to Show Cause" pursuant to the applicable provision of the Commission's rules. 18 C.F.R. § 1.6(d). The show cause order recited all relevant facts, tentatively framed the issues, and provided that the Company should file a response. The order and a copy of the Commission's staff report (relating the result of investigation by the Commission) were mailed to and actually received by the Company. The Company informed the Commission that it would neither respond nor appear. However, the Company was given actual notice of each of the subsequent steps in the proceeding. The Commission's orders fixing time and place of the hearing were mailed to and received by the Company. The Presiding Examiner's decision was mailed to and received by the Company, although it had not attended the hearing. Exceptions of counsel of the Commission's staff to the decision were served on the Company; also, the Commission's order, including its opinion and formal findings, was mailed to and actually received by the Company.

As an additional ground for holding the Commission's order invalid on its face, the Company urges that the Commission had no power to institute the proceeding because it had no authority to determine the question of coverage under the Act; that is, to classify as a "public utility." In this branch of the case, the Company's contentions appear to be that a judicial determination of "public utility" status must be made before the Commission can act. A review of the Federal Power Act demonstrates that its administration is unmistakably conferred upon the Commission and broad powers of rulemaking, prosecuting and adjudicating are given it. Specifically, with reference to the accounting procedures involved in the instant case, § 301(a) of the Act provides in part that "the Commission may prescribe a system of accounts to be kept by licensees and public utilities and may classify such licensees and public utilities and prescribe a system of accounts for each class. The Commission, after notice and opportunity for hearing, may determine by order the accounts in which particular outlays and receipts shall be entered, charged, or credited." We think that the orderly procedure inherent in the statutory scheme contemplates that the Commission in the exercise of its broad regulatory powers may determine coverage of the Act.[7] Cf. Macauley v. Waterman S. S. Corp., 1946, 327 U.S. 540, 66 S.Ct. 712, 90 L.Ed. 839. To hold otherwise would result in piecemeal administration of the Act, burdensome delays in giving effect to congressional intent and might deprive the courts of the informed judgment of the

7. We hold that the Commission has power to determine coverage of the Act in the type of proceeding in question. However, certain circumstances may require that the enforcing court make the initial determination. See Federal Power Comm. v. Panhandle Eastern Pipe Line Co., 3 Cir., 172 F.2d 57, affirmed 1949, 337 U.S. 498, 69 S.Ct. 1251, 93 L.Ed. 1499. The present case does not present such a problem since the F.P.C. made the coverage determination before proceeding in the enforcement court.

Commission on so fundamental a question. The Connecticut Light & Power decision recognized the Commission's power in this respect by remanding the case to the Commission with a requirement that appropriate jurisdictional findings be made. Numerous cases have affirmed Commission orders determining status derived from proceedings initiated in a manner similar to the one before us.[8] The Commission is authorized by the statute to adopt rules of practice and procedure, § 308(b); and to issue such orders, rules and regulations as it may find necessary or appropriate to carry out the provisions of the Act. § 309. Thus, it had power to issue the original process informing the Company of the proceeding. It is not contended that the Commission proceeding deprived the Company of due process of law by failure to provide adequate notice or opportunity to be heard. The Commission having power to conduct the proceeding, and adequate opportunity to be heard having been given, the Company could not, by deliberately refraining from participation, deprive the proceeding of its vitality. The entire controversy could not, by option of the Company, be forced into a court for de novo determination. To do so would violate fundamental tenets of primary jurisdiction, exhaustion of administrative remedies, and the orderly administrative procedures derived therefrom.

■ The Commission urges that in an enforcement proceeding the District Court may not inquire into the correctness of its determination of coverage under the Act, nor indeed into any question of the validity of its order. This view is based on a construction of the judicial review provisions of the Act. Briefly, the Act provides that a party aggrieved by an order of the Commission may petition the United States Court of Appeals for review of the order. § 313(b). The filing of a petition for rehearing before the Commission is made a condition precedent to review by the Court of Appeals. § 313(a). When a petition for review by the court is filed the Commission is to certify a transcript of the record of the proceeding before it to the court and from that point the court is to have "exclusive jurisdiction to affirm, modify, or set aside such order in whole or in part." § 313(b). Generally, no objection to the Commission's order is to be considered by the Court unless presented to the Commission in the petition for rehearing. § 313(b). The Commission's findings of fact are conclusive if supported by substantial evidence. § 313 (b). On the other hand, no such elaborate provisions are contained in the enforcement section of the Act. The section simply authorizes the Commission to seek a decree in the District Court enjoining violations of the Act or orders, rules, or regulations thereunder. § 314(a). "Upon a proper showing" the Court is to grant a permanent or temporary injunction or decree or restraining order. The Commission contends that the Act contemplates only one route for judicial review of its orders, that is, to the United States Court of Appeals. The mandatory petition for rehearing is said to indicate congressional intent that the Commission be given an opportunity to correct its errors before resort to the courts for review purposes can be had. It is urged that in the event a litigant could secure review by violating the order and waiting for an enforcement proceeding, the effectiveness of the rehearing provision would be seriously diminished.[9] Moreover, it is argued, violation of a Commission order is punishable by criminal penalties. § 316(b). No transcript of the record is required to be certified to the enforcing court and that court is not given power to "affirm, modify,

8. Hartford Electric Light Co. v. Federal Power Comm., 2 Cir., 1942, 131 F.2d 953, certiorari denied 1943, 319 U.S. 741, 63 S.Ct. 1028, 87 L.Ed. 1698; Jersey Central Power & Light Co. v. Federal Power Comm., 1943, 319 U.S. 61, 63 S.Ct. 953, 87 L.Ed. 1258; Federal Power Comm. v. East Ohio Gas Co., 1950, 338 U.S. 464, 70 S.Ct. 266, 94 L.Ed. 268, under Natural Gas Act; Cf. Connecticut Light & Power Co. v. Federal Power Comm., 1945, 324 U.S. 515, 534–535, 65 S.Ct. 749, 89 L.Ed. 1150.

9. Cf. Berger, Exhaustion of Administrative Remedies, 48 Yale L.J. 981, 988–991 (1939).

or set aside" the Commission's order in whole or in part. The enforcing court is a United States District Court while the reviewing court is a United States Court of Appeals. The Commission contrasts the Power Act's provisions with statutes such as the National Labor Relations Act, and sections of the Clayton Act relating to the Federal Trade Commission, which make it unmistakably clear that an enforcement proceeding is an alternative route for securing full judicial review. See 29 U.S.C.A. § 160(e, f); 15 U.S.C.A. § 21. Under different circumstances, the Commission's analysis would be most persuasive, but we emphasize that the Company did not attempt to secure full judicial review in the enforcement proceeding in the District Court. No attempt was made to have the transcript of record before the Commission brought into the District Court. The Company did not attempt to introduce extraneous evidence in the trial court to show the order's invalidity. In fact, the Company has accepted the Commission's findings of the basic facts of its physical mode of operation. It has simply insisted that the Commission had no authority to conduct the proceeding, but in the event it be held that it did, that the findings do not support the ultimate conclusion of "public utility," and, therefore, the invalidity of the Commission's order because of lack of jurisdiction is apparent on the face of the order. Were

we to accept the Commission's construction with respect to the securing of *full* judicial review in an enforcement proceeding we do not think the statute requires a reading that would deprive a court of equity of its traditional power of scrutinizing the order sought to be enforced to determine whether the Commission has "patently traveled outside the orbit of its authority".[10] Cf. N.L.R.B. v. Cheney California Lumber Co., 1946, 327 U.S. 385, 66 S.Ct. 553, 554, 90 L.Ed. 739; N.L.R.B. v. Noroian, 9 Cir., 1951, 193 F.2d 172; N.L.R.B. v. Red Spot Electric Co., 9 Cir., 1951, 191 F.2d 697, concurring opinion. In the cases cited no exceptions had been taken to the Board's order, but despite an explicit statutory command that the enforcing court should, in the absence of extraordinary circumstances, refrain from consideration of objections to the order not urged before the Board, (see N.L.R.A. § 10(e), 29 U.S.C.A. § 160(e)); the record was examined to ascertain whether the Board had jurisdiction to make its order. Cf. Piuma v. United States, 9 Cir., 1942, 126 F.2d 601. In support of its contentions the Commission has cited cases such as Yakus v. United States, 1944, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834; Bowles v. Willingham, 1944, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892; and United States v. Ruzicka, 1946, 329 U.S. 287, 67 S.Ct. 207, 91 L.Ed. 290.[11] In those cases the statutory framework made congression-

10. See concurring opinion of Justice Rutledge in Bowles v. Willingham, 321 U.S. 503, 526, 64 S.Ct. 641, 88 L.Ed. 892; and, cf. La Verne Co-op. Citrus Ass'n v. United States, 9 Cir., 1944, 143 F.2d 415. The quotation in text is from the Cheney opinion.

11. There may be some question whether the cases cited by the Commission support its position insofar as a regulation or order is challenged as invalid on its face. In the Yakus case the court indicated that no such contention had been made, and further reserved from the scope of its decision a challenge that the regulation was constitutionally invalid on its face. See 321 U.S. 414, 446–447, 64 S.Ct. 660. The claim of invalidity on the face of the order may have been present in Bowles v. Willingham, 321 U.S. 503, 526, 64 S.Ct. 641, 88 L.Ed. 892, concurring opinion. It does not appear that such a conten-

tion was advanced in the Ruzicka case. Subsequent Circuit Court decisions under the Emergency Price Control Act, 50 U.S.C.A.Appendix § 901 et seq., seem to indicate that a claim of invalidity on the face of the order would not be within the jurisdiction of the enforcing court. Cf. Cullen v. Bowles, 2 Cir., 1945, 148 F.2d 621, 624; Porter v. Eastern Sugar Associates, 4 Cir., 1947, 159 F.2d 299, 302; Fleming v. Dashiel, 9 Cir., 1947, 161 F.2d 612, 613; United States v. Pepper Bros., 3 Cir., 1944, 142 F.2d 340, 343. Compare a somewhat analogous problem under provisions of § 5 of the F.T.C.A., 15 U.S.C.A. § 45(c, g, l). See Piuma v. United States, 9 Cir., 1942, 126 F.2d 601, and Federal Trade Comm. v. Morton Salt Co., 1948, 334 U.S. 37, 54, 68 S.Ct. 822, 92 L.Ed. 1196. Under the Housing and Rent Act of 1947 see United States v. Fritz Properties, D.C.N.D.Cal.1950, 89

al intent more explicit, and the unique factual situations dealt with had overriding considerations of expediency not present here.[12] In the absence of an express statutory command we find no authority requiring a court of equity to enforce an administrative order invalid on its face. Taking the view that the Commission's order is not invalid on its face we reverse the cause for further proceedings in accordance with this opinion.

Judgment of dismissal reversed.

F.Supp. 772; Woods v. Laabs, D.C.W.D. Mich.1950, 92 F.Supp. 220; Henry v. Woods, Em.App.1951, 186 F.2d 312.

12. The Commission has not gone so far as to urge the non-reviewability of its orders in every type of enforcement proceeding. An enforcement proceeding may arise in such a way that review in it is necessary to do justice to the respondent, as where the order sought to be enforced is an order not subject to review in any other way under the Act.

Cf. Federal Power Comm. v. Metropolitan Edison Co., 1938, 304 U.S. 375, 383–384, 58 S.Ct. 963, 82 L.Ed. 1408; Federal Power Comm. v. Panhandle Eastern Pipeline Co., 337 U.S. 498, 69 S.Ct. 1251, 93 L.Ed. 1499; United Gas Pipe Line Co. v. Federal Power Comm., 86 U.S.App.D. C. 314, 181 F.2d 796, certiorari denied. 1950, 340 U.S. 827, 71 S.Ct. 63, 95 L.Ed. 607. In the present case the order sought to be enforced is one admittedly subject to review under the judicial review provisions of the Act.