CALIFORNIA ELECTRIC POWER CO. v.
FEDERAL POWER COMMIS-
SION et al.

No. 12987.

United States Court of Appeals
Ninth Circuit.

Oct. 14, 1952.

Rehearing Denied Nov. 12, 1952.

Henry W. Coil, Donald J. Carman, Riverside, Cal. (Harold M. Hammack and Kenneth M. Lemon, Riverside, Cal., of counsel), for petitioner.

Bradford Ross, Gen. Counsel, Howard E. Wahrenbrock, Asst. Gen. Counsel, Federal Power Commission and (Leonard Eesley, Washington, D. C., Francis L. Hall, Arlington, Va., Louis C. Kaplan, Attys., Federal Power Commission, Rogers Heights, Md., of counsel), for respondent.

L. E. Blaisdell, Dist. Atty. of Mineral County, Hawthorne, Nev., for intervenor Mineral County.

Holmes Baldridge, Asst. Atty. Gen., Paul A. Sweeney, Melvin Richter, T. S. L. Perlman, Attys., Department of Justice, Washington, D. C. (Charles Goodwin, Counsel, George Spiegel, Asst. Counsel, Bureau of Yards & Docks, Department of Navy, Washington, D. C., of counsel) for the United States as intervenor.

Everett C. McKeage, Boris H. Lakusta, Wilson E. Cline, Attys., Public Utilities Commission of State of California, San Francisco, Cal., for California Public Utilities Commission, as amicus curiae.

Before MATHEWS, HEALY, and ORR, Circuit Judges.

HEALY, Circuit Judge.

California Electric Power Company petitions for review of an order of the Federal Power Commission directing it to cease and desist from charging two Nevada customers (the Department of the Navy and Mineral County, Nevada) any rate other than "filed rates" for electric energy it sells those customers.

The Commission's order does not assume to perpetuate the "filed rates," but provides only that they shall control until and unless superseded by new rates filed by the Company or by rates fixed by the Commission. Aside from some minor, and, we think, inconsequential, objections of a procedural nature, the issue posed by the petition is whether the rates are subject to the Commission's filing requirements, or whether, as the petitioner contends, the Public Utilities Commission of California, either alone or in conjunction with the Public Service Commission of Nevada, has jurisdiction over the rates charged these customers.

Petitioner owns and operates an interconnected system for the generation and distribution of electric power in California and Nevada. The power sold to the Navy and to Mineral County is generated in and transmitted from petitioner's Northern Division plants in California.[1] Most of it comes from three plants in petitioner's Mono Basin system, these being hydroelectric projects licensed by the Commission under § 4(e) of Part I of the Federal Power Act, 16 U.S.C.A. § 797(e), to operate on the public lands. The energy sold the Navy is delivered to Navy-owned transmission lines at petitioner's Mill Creek plant in Mono County, California. From there it flows through the Navy's line across the California-Nevada state boundary to the Naval Depot at Hawthorne, Nevada. Similarly the electric energy sold Mineral County is delivered at the Mill Creek plant to Mineral County, which transmits the energy across the state border over its own line for resale to consumers in Mineral County. These lines in each instance are 55,000 volt transmission lines. At Hawthorne, Nevada, the energy in both instances is transformed to lower voltages for distribution.[2]

As regards the Navy, the power it purchases or generates is used to operate the Navy's various facilities at the Depot, and, in addition, to supply the needs of the occupants of a housing project which was built for and is occupied by civilian employees of the Depot, as well as the energy needs of the operators of the Depot's various concessions. Each housing or business unit has a separate meter, and the occupant thereof is billed and required to pay for the energy which he consumes. From 1943 to 1948,[3] between 15.4% and 28.6% of the Navy's yearly total power supply was resold to these residents and business concessions, the amount resold averaging 18.7% of the yearly total. By contract entered into in 1943 petitioner and the Navy agreed upon the rates to be charged for the energy furnished. This contract was not filed with the Power Commission as a rate schedule, but petitioner charged the contract rates until 1948, when it obtained from the California Public Utilities Commission a rate increase in respect of certain designated customers, including Navy, whom petitioner was serving under special contracts.

The properties and facilities of the Mineral County power system belong to and are operated by the County under the direction of its Board of Commissioners who ex-officio constitute the board of managers of the county-owned facility. Petitioner has sold to the County the power required for the system under a series of three-year contracts providing that at rates set forth in the contract petitioner would furnish and the County would purchase all of the ener-

1. The Commission found that petitioner's facilities utilized in these sales are facilities used for the transmission of electric energy in bulk, not for local distribution.

2. In addition to the energy purchased from petitioner, the Navy generates a small part (approximately 7.5% of the amount purchased from the petitioner) of its own requirements on three Diesel generators located at the Naval Depot.

3. The present proceeding was begun by order to show cause issued February 15, 1950.

gy required by the latter for resale and distribution to the ultimate consumers in the state of Nevada.

Petitioner argues that since it is a licensee under Part I of the Federal Power Act its rates to Navy and to Mineral County are to be regulated by the Commissions of Nevada and California under § 20 of the Act, and that they are not subject to regulation under Part II, §§ 201, 205 and 206.[4] The contention is not different from that made and rejected in Pennsylvania Water & Power Co. v. Federal Power Commission, 343 U.S. 414, 418, 72 S.Ct. 843, where the Court said that Part II proceeds on the assumption that regulation of public utilities transmitting and selling power at wholesale in interstate commerce is a matter which necessarily must be accomplished by the Federal government. It was thought that the program formulated by the Act would be hindered, not helped, if Part I licensees were held impliedly exempt from the more expansive regulation provided by Part II.

The transactions in question manifestly constitute sales by a public utility of electric energy in interstate commerce. It is of no moment that petitioner's facilities for the transmission and sale of the energy are all located in California and that those used to transmit it across the line into Nevada are owned by the purchasers of the energy. Public Utilities Commission v. Attleboro Steam & Electric Co., 273 U.S. 83, 47 S.Ct. 294, 71 L.Ed. 549; Federal Power Commission v. Arizona Edison Co., 9 Cir., 194 F.2d 679.[5] Nor is it of consequence, as the petitioner contends, that in one instance the energy is transmitted across the state line by the United States. Federal Power Commission v. Arizona Edison Co., supra, 194 F.2d at page 681. The question is not whether the United States is in interstate commerce, but whether petitioner is. But it is urged that sales to the United States or to Mineral County are not at wholesale within the Act's intendment since § 201(d) defines sales at wholesale as sales to any *person* for resale, and neither the United States nor Mineral County is by definition a person. Sections 3(4) and 3(3) of Part I and 201(f) of Part II of the Act are appealed to in support of the argument. Section 3(4) defines the word "person" as meaning "an individual or a corporation", and § 3(3), defining "corporation," excludes municipalities from the definition. Section 201(f) will be noticed in a moment.

The argument here predicated on § 201(d) was made to the Seventh Circuit in the recent case of Wisconsin-Michigan Power Co. v. Federal Power Commission, 197 F. 2d 472, where a number of municipalities were involved as purchasers for resale. Upon consideration of the legislative history and gradual development of the several provisions of the Act, together with the policy of the legislation as a whole, the court concluded, 197 F.2d at page 479, that Congress did not intend to exclude from its definition of sales at wholesale sales to municipalities for resale. It thought that to construe the Act as the power company contended would be to neglect other provisions, such as §§ 306 and 313(a), relating to complaints by municipalities, and to leave those bodies open to the rankest discrimination.

We agree with the Seventh Circuit that reference back to the early definitions contained in Part I should not be permitted to thwart the general policy manifested by the statute as a whole. It seems more than probable that the significance of those definitions was overlooked in the later formulation of Part II.

Nor is § 201(f) of help to the petitioner. This section states that "No provision in

4. The Commission found that the Nevada Commission has not been given jurisdiction by Nevada statutes over petitioner's charges to Mineral County or to the United States as contemplated by §§ 19 or 20, hence alternative jurisdiction is by those sections conferred upon the Federal Power Commission. Petitioner assails the finding, but we think it unnecessary to resolve the dispute.

5. Sec. 201(c) of the Act provides that "electric energy shall be held to be transmitted in interstate commerce if transmitted from a State and consumed at any point outside thereof  *  *  *."

this Part shall apply to, or be deemed to include, the United States, a State or any political subdivision of a State * * *." It is clear that the intended exclusion or exemption is from the regulatory burdens of the statute. For the purposes of the Act these public bodies are simply not deemed to be public utilities. But it would be inconsistent with the policy of the legislation, as well as with certain of its provisions already mentioned, to hold that, as wholesale purchasers of power, they are excluded from the benefits of the regulation of the utilities from which they buy. The entire thrust of Part II is toward the seller at wholesale, not the buyer.

Petitioner's sales to Mineral County are substantially in their entirety sales of energy for resale. But in respect of the United States it is contended, on several grounds, that the sale to the Navy is not for resale within the intendment of the Act. The principal of these grounds is that only a minor percentage of the amount sold the Navy was resold by it.[6] Another objection to Commission jurisdiction is that the Navy resells at a low rate; and a third is that petitioner's contract made no reference to resale and that petitioner did not intend to sell for resale.

We turn first to the latter objections. The Commission found as a fact that the energy in question was resold to ultimate consumers and consumed in Nevada. It found also that petitioner had knowledge of the resales. We are not persuaded that an express agreement or an intention on the Company's part that the energy shall be resold is required in order to confer jurisdiction. It appears without dispute that the only reason the service was not rendered by the local electric utility (Mineral County) was the latter's financial inability to undertake the business, hence the necessity of the Navy's action. As to the rate at which the Navy sells, we agree with the Commission that the public interest is involved in the Company's rate to the Navy, whether the burden of possibly excessive rates were to fall on the ultimate consumer of the energy or on the nation's taxpayers.

Petitioner's argument of lack of jurisdiction based on the percentage of power resold seems finally to have resolved itself down to the proposition that the percentage consumed by the Navy should be held subject to State regulation, and only the part resold regarded as subject to regulation by the Commission. In rebuttal the Commission cites Jersey Central Power & Light Co. v. Federal Power Commission, 319 U. S. 61, 63 S.Ct. 953, 87 L.Ed. 1258; Connecticut Light & Power Co. v. Federal Power Commission, 324 U.S. 515, 65 S.Ct. 749, 89 L.Ed. 1150; and Hartford Electric Light Co. v. Federal Power Commission, 2 Cir., 131 F.2d 953, certiorari denied, 319 U.S. 741, 63 S.Ct. 1028, 87 L.Ed. 1698, dealing with commingled flows of outstate and intrastate energy. It is unnecessary to discuss these cases in view of the very recent decision in Pennsylvania Water & Power Co. v. Federal Power Commission, supra, which deals with the same problem. Although the situations are not identical, we are inclined to think that the Penn Water case in principle disposes of petitioner's argument. There the power company contested the Commission's jurisdiction to regulate its sales in Pennsylvania to Pennsylvania utilities on the ground that 83% of the energy so sold was intrastate energy developed in Pennsylvania, only 17% coming from Maryland. The Court said that the Commission "has complete authority to regulate all of this commingled power flow." [343 U.S. 414, 72 S.Ct. 846.]

Here, as in the Penn Water case, the supposed nonjurisdictional part of the energy is indistinguishable at the point of sale from the remainder. Moreover the amount resold is not constant, but fluctuating. The Commission contends that it is not practicable to segregate the jurisdictional from the alleged nonjurisdictional part. It seems clear, although petitioner contends otherwise, that the only mode of segregation would be by separating the two loads and supplying each by an independent trans-

6. As observed above, the actual percentage of power resold fluctuated rather widely, averaging 18.7% of the yearly total.

mission line from the point of metering and purchase to the Depot.

In virtually all sales of power to a public body, such as a municipality, we would suppose that some part of the energy is used by the purchaser for its own purposes, the rest being resold to the consuming public. It would create untold difficulty and confusion if petitioner's argument in respect of severability for rate regulation purposes were to be given countenance.

The Commission's order is affirmed.