The **CITY OF HASTINGS, NEBRASKA,**
a Municipal Corporation, Appellant,

v.

**KANSAS–NEBRASKA NATURAL GAS
COMPANY, Inc.,** a Kansas Corpora-
tion, Appellee.   (Two cases.)

Nos. 15192, 15193.

United States Court of Appeals
Eighth Circuit.

Nov. 1, 1955.

------◆------

Albert P. Madgett, Hastings, Neb., and Lloyd J. Marti, Lincoln, Neb. (Warren K. Dalton, Lincoln, Neb., with them on the brief), for appellant.

Ezekiel G. Stoddard, Washington, D. C., and James D. Conway, Hastings, Neb., for appellee.

Before SANBORN, JOHNSEN and VAN OOSTERHOUT, Circuit Judges.

JOHNSEN, Circuit Judge.

The gas distribution system in the City of Hastings, Nebraska, is municipally owned, and the City obtains the gas which it sells to consumers from the Kansas-Nebraska Natural Gas Co. The electric light-and-power plant for the City likewise is municipally owned, and the City also has been obtaining from the Kansas-Nebraska Natural Gas Co. the gas which it uses for fuel in the plant's operation.

Kansas-Nebraska began to sell gas to the City, for its conducting of both of these activities, in 1942, under a separate contract as to each. The contract covering gas supplied to the City as a distributor fixed a certain rate for gas used by the City "for resale", with an exclusionary clause that "Gas used or consumed by Buyer for industrial use shall not be covered by the foregoing schedule but shall be covered by separate agreement." The rate schedule of the contract, with its exclusionary clause, had been duly filed by Kansas-Nebraska with the Federal Power Commission. The contract covering gas furnished to the City for the operation of its power plant, which was on an interruptible basis, provided for a different rate.

The existence of this separate contract for the power-plant gas apparently operated to the City's satisfaction until 1947, when Kansas-Nebraska filed a new rate schedule with the Federal Power Commission, voluntarily reducing the price on gas being supplied by it to the City and the other distributors in the area for resale, but, as under the previous schedule, making exclusion of gas used or consumed by any such distributor for its own industrial purposes. Instead, however, of representing a straight commodity charge, as the previous rate had been, the new rate consisted of a demand charge for such quantity of gas as the distributor obligated Kansas-Nebraska to deliver, under a contract to be entered into between them, plus a commodity charge for such quantity of gas as the distributor actually took.

To insure an adequate margin of distributor gas for new customers and community growth, the City desired to subject Kansas-Nebraska to a substantial demand requirement, but it wanted, in such agreement as it might make, to have a right to use the margin between its contract demand and its customer consumption, for fuel purposes of its power plant. Kansas-Nebraska refused to enter into any such agreement with it.

The City then sought, by correspondence, to get the Federal Power Commission to require Kansas-Nebraska to amend its new rate schedule, so as to leave the gas covered by its distributor demand subject to use by it in its power plant. The Commission made reply that the request was in effect one to have the Commission establish a rate on gas for use by the City in its power plant, which the Commission regarded itself as without power to do, since the jurisdictional limitation of the Natural Gas Act made its provisions "apply * * * to the sale in interstate commerce of natural gas for resale * * * but * * * not * * * to * * * any other * * * sale of natural gas * * *." 15 U.S.C.A. § 717b.

The City thereupon entered into a contract with Kansas-Nebraska for the sup-

plying of a certain quantity of distributor or demand gas to it under the new rate schedule, with the exclusionary clause included in its provisions, and shortly afterward it also executed a new separate agreement covering the purchase of gas for its power plant, to take the place of the one previously in effect. Later, under a notice provision in the instrument, it purported to cancel the separate power-plant contract, but continued to allow part of the gas being supplied to it by Kansas-Nebraska to go through its pipe, leading from its main, to the power plant, using the gas for fuel therein, and refusing to give Kansas-Nebraska access to the meter by which such gas previously had been measured. It asserted that it was merely making use of part of the gas which it was entitled to receive under its demand contract; that it had a legal right to use any excess existing in such gas at any time, in any manner that it saw fit; and that it was only obligated, and was willing, to pay for the gas on this basis.

Kansas-Nebraska insisted that the City could not make use of gas in its power plant, or pay for such gas, under its distributor contract; that whatever gas it used in the power plant could only be taken, and was required to be paid for, on the basis of the power-plant contract, which the City had purported to cancel, and subject to the metering and rate provisions of that agreement; and that the City therefore would have to pay for such gas as power-plant, and not distributor, gas.

Upon the City's continued refusal to pay for such gas except as a part of its distributor supply, Kansas-Nebraska instituted suit in the federal court, on diversity jurisdiction, for a declaration of its rights against the City, under 28 U.S.C.A. § 2201, and for a recovery on the basis of the rights claimed to exist in its favor as to such gas. Some months later, when the City took further steps to render certain the cancellation of the power-plant contract and to declare with finality its unwillingness to engage in any negotiation for another such separate contract, Kansas-Nebraska brought an additional suit, to enjoin the City from making further use of the gas supplied to it under its distributor contract, for the operation of its power plant, predicating its request for relief upon the provision of the distributor contract that the agreement covered only gas to be used "for resale" and excluded gas which the City wanted for any industrial use of its own.

The District Court, in a consolidated hearing of the two cases, granted Kansas-Nebraska the relief which it sought in each suit, and the City has appealed.

Trial of the cases in the District Court had been allowed to wait, until the Federal Power Commission had taken action upon a complaint, filed by the City with the Commission, after Kansas-Nebraska had instituted its two suits, by which administrative proceeding the City formally sought to get the Commission to eliminate the exclusionary clause from Kansas-Nebraska's distributor-gas rate schedule as being invalid, and to have the Commission regulatively hold that the rate and supply under the City's distributor contract were properly applicable to such part of this gas as the City might see fit to use in its power plant.

The Commission, after a full hearing on the complaint, issued its Opinion No. 244, 98 P.U.R.(N.S.) 1, declaring in substance (the Chairman of the Commission dissenting) that, on the history, facts and relations shown by the evidence to have existed in the situation, the Commission was without authority under the Natural Gas Act to require Kansas-Nebraska to eliminate the exclusionary clause from its rate schedule, in order to afford the City the opportunity to use part of the gas contracted to be supplied to it "for resale" or distribution purposes, as fuel for its power-plant activity. The Commission in effect held that, by their dealings and contracts, the parties had effectively established between themselves a separate sales identification and status for such gas as the City desired for its power plant; that, so far as the Natural Gas Act was concerned, they had a right so to do, and

Kansas-Nebraska was entitled to have the Commission respect the identification and status thus established, where the consequence of what had been done could not be said to preclude or interfere with a proper exercise of the Commission's rate authority over gas which Kansas-Nebraska was supplying for resale; that the Commission could not find on the facts involved that there was anything in the situation which was regulatively inseparable from or materially affective of a proper exercising by the Commission of its power over gas sold for resale, within the purposes and provisions of the Act; that the City's complaint therefore amounted realistically to nothing more than an attempt to have the Commission fix the rates upon gas sold by Kansas-Nebraska to the City for its own industrial use, by artificially, and not as a matter of practical inseparability in the situation, tying in such gas to the sale of gas made to the City for resale as a distributor; that, on the circumstances shown, the Commission could neither properly require such a tie-in on the part of Kansas-Nebraska nor interpret the City's distributor contract as having involved one; and that the City's complaint therefore should be dismissed for want of jurisdiction to grant the relief sought.

The City sought review of the Commission's order in the Court of Appeals for the District of Columbia Circuit, but that Court had not yet rendered its decision at the time the present cases were tried and decided by the District Court. The order of the Commission has, however, since been affirmed by the Court of Appeals, City of Hastings, Nebraska v. Federal Power Commission, D.C.Cir., 221 F.2d 31, and denial also has been made by the Supreme Court of an application on the part of the City for a writ of certiorari to that decision, 349 U. S. 920, 75 S.Ct. 660.

■ The opinion of the Court of Appeals, in affirming the Commission's order, set out the facts of the situation more fully than is necessary here for purposes of disposing of these appeals.

The principal questions which the City raises and seeks to have us determine are ones which were presented or involved in the Federal Power Commission's evaluation of the situation and on the judicial review had of the propriety of the Commission's concepts and conclusions as a basis for its order. Upon these questions, the City has had its day in court, and it is without right to ask for any further consideration of them. (We may, however, incidentally add that we think the conclusions, results and implications of the Court of Appeals' opinion, 221 F.2d 31, are sound in the situation.)

We shall accordingly not engage in any discussion of the City's contention here that the exclusionary clause contained in the rate schedule and in the distributor contract was void; or that the gas taken by the City from its distributor supply for use in its power plant was in any event outside the operation of the exclusionary clause, because it represented gas turned over to the City under Kansas-Nebraska's demand obligation, to which title became vested in the City upon its delivery, so that it was in fact gas acquired by the City for resale purposes within the operation of the contract, and Kansas-Nebraska therefore could have no right to challenge any incidental use which might be made of it at such times as it was not required for resale needs; or that the situation should at the least be held to fall within the principle of indistinguishability or unseverability, applied in special instances of pipeline operation to sale and non-resale gas, for rate purposes, as recognized in California Electric Power Co. v. Federal Power Commission, 9 Cir., 199 F.2d 206; Colorado Interstate Gas Co. v. Federal Power Commission, 3 Cir., 185 F.2d 357; Northern Natural Gas Co. v. Federal Power Comm., 8 Cir., 206 F.2d 690— which cases were relied upon by the City and were discussed by the Court of Appeals in its review of the propriety of the Federal Power Commission's order. See 221 F.2d at pages 37–39.

■ The City further, however, has made attack upon the amount of the re-

covery allowed by the trial court, on the ground that the power-plant contract was void for want of mutuality, and that its provisions therefore could not properly be made the basis for declaring breach and measuring damages. The contention is that since the supplying of gas under this contract was on an interruptible basis, there existed no such obligation on the part of Kansas-Nebraska as could constitute the consideration for a contract. But the mere fact that the agreement had an interruptible basis, so that the mutual promises were perhaps not coextensive in their scope, could not be said, on the language used, to have made the situation one where Kansas-Nebraska could arbitrarily have refused to supply the City with any power-plant gas, or where, on the realities involved, its promise to supply such gas, with interruptible safeguard, would be so illusory or lacking in substance in the parties' relationships as to leave it incapable of constituting an adequate legal consideration. See 1 Williston on Contracts, Rev.Ed., § 141, p. 1506.

■ But beyond this, even if the instrument for the sale and purchase of gas for the power plant had been one merely of unilateral obligation, the supplying of gas by Kansas-Nebraska under it and the City's use thereof for its power plant, while the instrument was still operative or outstanding, necessarily would give rise to a legal obligation on the part of the City, as to the performance so engaged in and accepted, to make payment on the basis of the terms of the instrument. Cf. Stearns v. Nebraska Bldg. & Inv. Co., 109 Neb. 657, 192 N.W. 330, 332–333; Calkins v. F. W. Woolworth Co., 8 Cir., 27 F.2d 314, 318; 1 Williston on Contracts, Rev.Ed., § 106, p. 366.

■ And as to the gas which the City took and used in its power plant, after the power-plant contract had been validly cancelled, the City equally, as the trial court held, was bound to pay for such gas on the basis of the rates and terms of the instrument, since Kansas-Nebraska had, subsequent to the City's cancellation, made a written offer to the City to continue to furnish such gas at "the same rates and the same terms as contained in the contract", and the situation was without any basis other than this for the City to take and use gas for its power-plant purposes.

Finally, the City contends that the trial court erred in the amount or period for which interest was allowed. The court included in the recovery interest at 6 per cent per annum on each monthly payment required by the contract, from the time that the terms of the contract made such payment due.

Nebr. R.R.S.1943, § 45–104, in its here material portions, provides: "On money due on any instrument in writing, or on settlement of the account from the day the balance shall be agreed upon, * * * interest shall be allowed at the rate of six per cent per annum. Unsettled accounts between parties shall bear interest after six months from the date of the last item thereof."

The argument of the City is that whatever amount it might be held liable to pay for the power-plant gas, if such gas was not within the operation of its distributor contract, constituted in the sitution an unsettled account, because of the dispute which had existed between the parties as to what the City's obligation for such gas was, and that it therefore could not be subjected to the burden of interest until six months after the date of the furnishing of the last gas for which recovery was being granted. Or, at least—the City says—the gas furnished in any month would give rise to an account for that month, on which interest would not commence to run until six months after the date that such account was payable.

■ But what is involved here is a sale of goods under a written contract, which by its provisions had given the purchase price of the gas furnished during any month the status of a distinct legal demand, involving separate meter-checking, billing, and payment by a

fixed date. The City's attempted denial of the application of the instrument could not change the status of its obligation for payment or affect the incidents, such as the commencement of interest, attendant upon the nature of the obligation, where the contract was in fact legally controlling in the situation, as it is being held to have been.

The Nebraska Supreme Court has held that any sale of goods or part of goods, made under an express agreement that the purchase price therefor shall be paid by a certain date, gives rise to an independent demand in favor of the seller for such purchase price, and the seller is entitled to interest thereon from the date that the buyer was obligated to make the payment. Beck v. Devereaux, 9 Neb. 109, 2 N.W. 365, 366; Garneau v. Omaha Printing Co., 52 Neb. 383, 72 N.W. 360, 361. And this is the general rule in all cases of sales, where the parties by their contract have fixed a definite date for the payment of the purchase price of the specific goods. See American Iron and Steel Mfg. Co. v. Seaboard Air Line Ry., 233 U.S. 261, 265, 34 S.Ct. 502, 58 L.Ed. 949.

The judgment in each of the two cases involved is affirmed.

Cameron, Circuit Judge, dissented.