**STATE OF WISCONSIN et al. v. FEDERAL POWER COMMISSION.**

**WISCONSIN POWER & LIGHT CO. v. FEDERAL POWER COMMISSION.**

Nos. 11224, 11225.

United States Court of Appeals District of Columbia Circuit.

Argued May 21, 1952.

Decided Nov. 13, 1952.

Writ of Certiorari Denied April 13, 1953.

See 73 S.Ct. 795.

1. James v. Lawrence, 1949, 84 U.S.App. D.C. 355, 176 F.2d 18.

William E. Torkelson, Chief Counsel, Public Service Commission of Wisconsin, Madison, Wis., with whom Stewart G. Honeck, Deputy Atty. Gen. of Wisconsin, was on the brief, for the petitioners in Case No. 11224.

William Ryan, of the Bar of the Supreme Court of Wisconsin, *pro hac vice,* by special leave of Court, Madison, Wis., with whom James W. Close, Chicago, Ill., was on the brief, for the petitioner Wisconsin Power & Light Co., in Case No. 11225. Omar L. Crook, Washington, D. C., also entered an appearance for petitioner.

Howard E. Wahrenbrock, Asst. Gen. Counsel, Federal Power Commission,

Washington, D. C., with whom Bradford Ross, Gen. Counsel, Federal Power Commission, Washington, D. C., was on the brief, for respondent. Francis R. Bell, Atty., Federal Power Commission, Washington, D. C., also entered an appearance for respondent.

Before CLARK, PROCTOR and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

On July 12, 1951, the Federal Power Commission ordered the Wisconsin Power and Light Company to file rate schedules for the Company's electric service to four municipalities in southwestern Wisconsin. The Company petitioned this court under section 313(b) of the Federal Power Act, 16 U.S.C.A. § 825l(b), to review and set aside the Commission's order of July 12, as well as another issued by it on August 27, 1951, denying the Company's application for a rehearing. A like petition was filed by the State of Wisconsin and the Public Service Commission of Wisconsin. Proceedings on these petitions were consolidated by order of this court.

[1] We think the petitioners' principal contentions are disposed of by the able opinion of the Seventh Circuit in Wisconsin-Michigan Power Co v. Federal Power Commission, 1952, 197 F.2d 472, a case which arose upon strikingly similar facts. There, as here, the issue was whether the Commission had jurisdiction, pursuant to section 205 of the Federal Power Act, 16 U.S.C.A. § 824d, over the rates charged

certain municipalities. In each case the petitioning company sold to the municipalities a supply of electric energy, some of which originated out of state, for resale by them to their residents. In each it was urged, on similar grounds, that this business was not covered by section 205. It is our view, as it was the Seventh Circuit's in the Wisconsin-Michigan case, (1) that these are sales at wholesale[1] within the meaning of the definition contained in section 201(d); (2) that the section 201(b) exemption from Commission jurisdiction of "facilities used in local distribution" is inapplicable here and the Company therefore is a public utility within the meaning of the definition in section 201(e); and (3) that a history of previously unchallenged regulation by the State does not oust the Commission of jurisdiction. The reasoning given by Judge Lindley in support of his conclusions develops the views expressed by this court in Pennsylvania Water & Power Co. v. Federal Power Commission, 1951, 89 U.S.App.D.C. 235, 193 F.2d 230, 239–241, affirmed, 1952, 343 U.S. 414, 72 S. Ct. 843. See also Federal Power Commission v. Arizona Edison Co., 9 Cir., 1952, 194 F.2d 679; California Electric Power Co. v. Federal Power Commission, 9 Cir., 1952, 199 F.2d 206. Under the circumstances, we think it would serve no useful purpose to endeavor to supplement Judge Lindley's discussion of the governing legal principles.

A procedural point urged by the petitioner Company requires consideration, however. It contends that the Commission

---

1. The Commission made no finding that these sales were "national in character." The Company urges that such a finding was necessary. We disagree. Where interstate transmission is involved, the controlling distinction is between wholesale and retail sales. See Panhandle Eastern Pipe Line Co. v. Michigan Public Service Commission, 1951, 341 U.S. 329, 334, 71 S.Ct. 777, 95 L.Ed. 993; Panhandle Eastern Pipe Line Co. v. Public Service Commission, 1947, 332 U.S. 507, 517, 68 S.Ct. 190, 92 L.Ed. 128; Colorado-Wyoming Gas Co. v. Federal Power Commission, 1945, 324 U.S. 626, 630, 65 S.Ct. 850, 89 L.Ed. 1235. In none of the cases just cited was a finding made, or deemed necessary, that the sales

in question were national rather than local in character. And the fact "that the amount of out-of-state energy is small in proportion to the total amount of energy sold is unimportant." Wisconsin-Michigan Power Co. v. Federal Power Commission, 197 F.2d 472, at page 478. Nor does "wholesale" mean a large quantity: Panhandle Eastern Pipe Line Co. v. Commission, supra, 332 U.S. 507, at page 515n, 68 S.Ct. 190, at page 194. In the instant case, the Commission found, among other things, that "It is necessary and appropriate for the purposes of the Federal Power Act * * * *" that the Commission order the Company to file a schedule of rates for the sales in question. (R. 1205).

entered the order of July 12, 1951, without according the Company due process of law. The basis of its contention is that it did not acquire the distribution facilities here involved until after the close of the Commission's hearings; that it "has had no opportunity since it became the owner of the * * * property, to be heard with reference to its operation of said property," and that the Commission therefore was not justified in finding it to be a "public utility," subject to the filing requirements of the Act.

The sequence of events underlying this contention is as follows: When the hearing before the Federal Power Commission Examiner closed on June 9, 1950, the Company was not yet the owner of the facilities in question. But it had previously made application to the Commission for authorization (under section 203 of the Federal Power Act, 16 U.S.C.A. § 824b) to acquire them (R. 704–808). As a result of this application it had been designated by the Commission as an additional respondent in the original proceeding, and ordered to show cause why it should not file rate schedules "if, when and as the acquisition * * * is approved and authorized." (R. 1047). The Company did not appear at the hearing or offer evidence. In its return to the show-cause order it simply denied that the Commission had any jurisdiction to require it to file schedules. The acquisition was approved by order of the Commission on June 21, 1950. The Company actually took over the facilities on June 30, 1950, a fact of which it notified the Commission by formal report on July 31. The Examiner took notice of this fact in his decision, announced on March 14, 1951. He found that "there is at least a presumption that the existing method of operation [i.e., securing the electricity sold from out-of-state] * * will be continued * * *," and ordered the Company to file rate schedules for its service to the municipalities. The Company filed exceptions to this decision, as

will more fully appear, but did not except to the taking of notice. The Commission's decision was filed on July 12, 1951. It also took "official notice" of the Company's report of the completion of the acquisition, "pursuant to" its approval order of June 21, which it interpreted as requiring that energy for the municipalities continue to come from the out-of-state source during the next two years. On that basis, it confirmed the filing requirement.

 The Company now complains of this taking of notice and of alleged misinterpretation by the Commission of the terms on which it approved the acquisition. Its theory is that these actions were essential to the finding that it is a "public utility," and hence that this finding, essential to Commission jurisdiction, is unjustifiable. The Company further urges that it should have been heard upon the allegations of its petition for rehearing. These were to the effect that, "pursuant to a predetermined plan to supply the four municipalities" with Wisconsin energy, three of them had received no out-of-state energy since twelve days after the transfer of ownership, except in emergencies.[2] The Company appears to contend that these allegations, if true, required that the Commission withdraw or modify its order of July 12, 1951.

 We think the Company's arguments quite untenable. In the first place, there are many occasions—and this would seem to be one of them—on which a regulatory agency can and should take official notice of the reports filed with it by a regulated company. See Market Street R. Co. v. Railroad Commission, 1945, 324 U.S. 548, 562, 65 S.Ct. 770, 89 L.Ed. 1171; cf. Administrative Procedure Act, § 7(d), 5 U.S.C.A. § 1006(d). Secondly, the objection—if any—to the taking of official notice by the Examiner was waived by failure to file appropriate exception under the Com-

2. As to the fourth municipality, the Company alleges in its petition to this court that that town too is now served by power from Wisconsin sources. But that fact—if it be a fact—cannot under the

circumstances be raised for the first time in this court. See Section 313(b) of the Federal Power Act, 16 U.S.C.A. § 825l(b).

mission's rules;[3] the Company thereafter could not complain if the Commission likewise took official notice. Thirdly, the Commission's finding in its order of July 12, 1951—that the Company is subject to the filing requirements—is amply justified without need to rely on official notice of the report of July 31, 1950. In its exceptions to the Examiner's decision in the spring of 1951 the Company represented to the Commission that it was operating the facilities in question in the same way its predecessor had. At that time the Company affirmatively stated that the power then being sold to the municipalities was coming in part from Illinois and that title passed to the Company at the state line (R. 1141, 1142, 1145). And it requested the Commission to make findings to that effect (R. 1150–51). Such findings were included in the Commission order of July 12, 1951. Fourthly, these representations also dispose of the Company's contentions with respect to misinterpretation of the terms of the acquisition: the misconstruction, if any, was harmless, since it was not the only basis for concluding that interstate sales were being made.

Nor did the Commission abuse its discretion when it denied the petition for rehearing. If the actual facts are as there set forth, i.e., that three of the towns had for some time been connected to Wisconsin power sources, the Company should have given the Commission prompt notice of the change. Instead, it delayed for more than a year in doing so, and in the interval made contrary representations to the Commission. Orderly dispatch of administrative business—as of judicial business—demands that parties give timely notice of changed positions or changed facts. If they do not, they must take the consequences. See Missouri Pacific Ry. Co. v. Castle, 1912, 224 U.S. 541, 546, 32 S.Ct. 606, 56 L.Ed. 875. Under the circumstances, we think the Commission acted within its powers.

The orders of the Commission will accordingly be affirmed.

3. Section 1.31(c) of the Commission's General Rules and Regulations provides that "Failure to file exceptions within the time allowed under this section shall constitute a waiver of all objections to the intermediate decision served * * * and any matter not included in such exceptions shall be deemed waived."