**INDIANA & MICHIGAN ELECTRIC COMPANY, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

**No. 15285.**

United States Court of Appeals Seventh Circuit.

July 13, 1966.

Certiorari Denied Dec. 5, 1966.

See 87 S.Ct. 509.

---

Richard M. Dicke, Rolon W. Reed, New York City, Simpson Thacher & Bartlett, New York City, Anthony L. Fletcher, New York City, of counsel, for petitioner.

John J. Dillon, Indianapolis, Ind., amicus curiae.

Richard A. Solomon, Asst. Gen. Counsel, Israel Convisser, Attorney, Federal Power Commission, Washington, D. C., Howard E. Wahrenbrock, Sol., Ernst Liebman, Federal Power Commission, Washington, D. C., for respondent.

Before DUFFY, KNOCH and KILEY, Circuit Judges.

DUFFY, Circuit Judge.

The orders of the Federal Power Commission here under review (Opinion No. 458) issued April 14, 1965 and Opinion No. 458-A issued June 11, 1965, 33 FPC ——), require the Indiana & Michigan Electric Company (I&M) to file with the Commission its rate schedules covering wholesale sales to fourteen municipal electric systems and seven rural electric cooperative systems located in Indiana, and two municipal electric systems and one rural electric cooperative system located in Michigan, all of which sales were found by the Commission to be in interstate commerce.

Petitioner appeals from the above orders claiming there is no basis in law or in fact for the finding below that the Federal Power Commission has jurisdiction over the sales here in issue. The Federal Power Commission has jurisdiction over the wholesale sale of electric energy only if the sale is in interstate commerce. 16 U.S.C. § 824. Petitioner also claims it did not receive a fair hearing in accordance with due process of law.

Indiana & Michigan Electric Company, together with five other operating companies, is an integral part of the American Electric Power System (AEP), a single coordinated power system operating as an integrated unit in Michigan, Indiana, Ohio, Kentucky, West Virginia, Virginia and Tennessee, with

generating facilities combined by an inter-connected transmission grid. The System's dispatching center at Canton, Ohio, directs the dispatch and utilization of energy on a continuous basis to provide the capacity and energy required to carry all the customer demands in the seven-state area at maximum economy.

The proof shows that I&M realizes substantial advantages from its participation in the integrated operations including savings in capital outlay for generating facilities, savings in the cost of generating and transmitting energy, better control and maintenance of voltage levels and greater reliability of service.

The System serves more than 5,-400,000 people, and is tied together by a network of 14,000 circuit miles of 345,000 volt line, the highest voltage in general use in the United States. The System is interconnected with nineteen other electric power systems at sixty-six locations, including thirty-nine major, high-voltage interconnections.

The electric load of every customer of every operating company in the System is supplied with electric energy from the entire AEP pool.

AEP makes no attempt to control energy flows on individual lines because electric energy flows freely and automatically as determined by the electric characteristics of the network and operations of the System. Only the net of flows over all interconnections is controlled by increasing or decreasing generation so as to maintain interconnection schedules and to maintain frequencies at 60 cycles.

I&M daily transmits electric energy across the Indiana-Michigan border. The proof showed that I&M's total annual generation in Michigan is insufficient to supply the annual demand of its Michigan wholesale customers, and the additional amounts of energy needed are provided by I&M from sources outside the state of Michigan.

The Commission found that the evidence in the record clearly showed the receipt of out-of-state energy by I&M's wholesale customers. The Commission said: "Moreover, while it is not practicable to trace the energy flows precisely from specific generating plants to specific loads, the company records show conclusively that energy generated outside Indiana and Michigan pervades I&M's facilities and is delivered to those portions of I&M's system serving the municipals and cooperatives, and we so find. Thus, I&M receives electric energy from Ohio Power Company, The Cincinnati Gas and Electric Company, Commonwealth Edison Company, Ohio Valley Electric Corporation, and probably, Illinois Power Company, all of whose generation is located outside of Indiana or Michigan, and transmits this energy on its high voltage transmission network. For instance, the energy from Commonwealth Edison is received at I&M's Olive Substation in northern Indiana, and, when the I&M generating units at the Twin Branch station are not operating, commingled energy through Olive supplies practically all of the electric needs of north central Indiana and Michigan area. * * * ''

Petitioner insists that Federal Power Commission sales jurisdiction must be proved by substantial scientific and engineering evidence that out-of-state energy flows to each sale in issue and that these sales are not made over facilities used in local distribution. I&M insists that the AEP system is too complex to permit ascertainment that out-of-state energy did or did not reach I&M's wholesale customers.

I&M contends that the most that can be said for the evidence produced by the Federal Power Commission in this case is that there does exist a hypothetical possibility that any particular load of an electric system connected to an interstate system could, in fact, be receiving energy at any given moment solely from an in-state source; solely from an out-of-state source; or from a combination of both.

Electric energy moves at approximately 186,000 miles per second—the speed of light. It cannot be stored and is gen-

erated as needed. The loads which are usually supplied by various generating sources on a network, change from moment to moment, being added to, increased, decreased, or cut off at the discretion of the customer. Every change affects every other generating unit connected with the network because they are interlocked electromagnetically.

The amount of system generation is constantly changing and system frequency, which is an indication of the speed of the generators, also fluctuates continually, usually a bit above or a bit below 60 cycles.

Every connected generator in AEP's seven-state system, contributes energy to the system in order to supply part of the increment of an additional load and to maintain the balance in the system between generation and load.

American Electrical Power Service Corporation (AEP.), pursuant to a contract between itself and the operating subsidiaries, renders centralized management, engineering and supervisory service, and operates the dispatching center so that the minute-to-minute energy requirements of the system are met by those generating facilities that can be operated most economically at the time of need.

With few exceptions, all of the electrical energy produced by the generating units in the System is delivered to the high voltage lines of the common seven-state transmission grid from which all of the customers of the companies in the pool are supplied.

Although I&M has generating capacity more than sufficient to meet the energy needs of its Indiana and Michigan customers, it frequently generates insufficient energy to meet its own requirements. For example, during 1962, I&M's Twin Branch generating station, with 29% of I&M's steam electric capacity, generated only 7% of I&M's steam electric production. Because of its relatively high fuel costs, the Twin Branch station was shut down for 107 full days in 1962, and for some hours of each of 164 other days in that year.

Consequently, many of the interconnection transactions are transactions in which the energy sold is generated at a cost lower than it would cost the buyer to generate it. To illustrate, the low-cost energy from Appalachian Power Company and Ohio Power Company is used by I&M in place of energy which could have been generated at a higher cost at its Twin Branch plants.

It is impossible to match generating instantly to the load variations and frequency deviations that are constantly occurring, but the System keeps these deviations as small as possible by tie-line and frequency control equipment. As a result, says the Commission, each day of the year there are transfers of electrical energy into and out of I&M's electric system across the Indiana-Ohio and Indiana-Illinois borders.

We must first consider here 1) whether the electric energy sold by I&M, a member of an integrated seven-state electric power system that meets its system loads with power generated in various states on the basis of economy, are sales in interstate commerce subject to the jurisdiction of the Federal Power Commission, and 2) whether the facilities used in making such sales are facilities used in local distribution, and if so, whether for that reason the sales are beyond the jurisdiction of the Commission.

■  The first sentence of I&M's brief emphasizes that for more than forty years, the regulation of plaintiff's sales of electric energy has been by the state of Indiana. Although Indiana has exercised jurisdiction over I&M's sales up until the present, it has been held that "a history of previously unchallenged regulation by the State does not oust the Commission of jurisdiction." State of Wisconsin v. Federal Power Commission, 91 U.S.App.D.C. 307, 201 F.2d 183. 185, cert. den. 345 U.S. 934, 73 S.Ct. 795, 97 L.Ed. 1362.

■  We think the proof before the Commission was sufficient to show that out-of-state energy reached all of the

wholesale customers. True, point to point tracing was impossible. This kind of tracing requires automatic recording meters at various points on the system and I&M does not need and does not have such meters. Hence, I&M insists that this kind of proof is not possible on their system, and that no other kind or type of proof can be sufficient.

We think the Commission was justified in holding that the important consideration in determining jurisdiction here is the integrated interstate pool character of the operation. There is no dispute in the evidence but that in the AEP electric system, of which I&M is a part, a pool of energy generated in several states supplies the entire system load, without reference to state or corporate lines.

The unpredictable and free-flow of energy in the System in response to any number of constantly changing occurrences, makes it certain, in the view of the Federal Power Commission that out-of-state energy received by I&M at a number of points at or near its eastern, southern or western borders, at one time or another, reaches each of I&M's wholesale customers.

We hold the Commission was justified, based upon expert opinion evidence and otherwise, in holding the sales by I&M to its wholesale customers were in interstate commerce and were subject to the jurisdiction of the Federal Power Commission. Pennsylvania Water & Power Co. v. Federal Power Commission, 343 U.S. 414, 72 S.Ct. 843, 96 L.Ed. 1042.

In the *Pennsylvania Water* case, the Supreme Court, in referring to the integrated interstate electric system involved, quoted approvingly from the Commission's opinion below which had stated:

"In this manner energy crossing the State boundary, with other system energy, is used to fulfill system requirements. There result times when system energy generated in Pennsylvania is used, mixed or unmixed, in meeting system requirements in Maryland. Similarly, there are occasions when system energy from Maryland is used, mixed or unmixed, in meeting system requirements in Pennsylvania. Energy flows in, across, and out of the system transmission network as the needs of the interconnected members develop from minute to minute and day to day.

"It is accordingly evident that the operations of the unified system enterprise are completely interstate in character, notwithstanding the fact that system energy transactions at some particular times may involve energy never crossing the State boundary."

We reject I&M's fundamental proposition in this case that in order to prevail, the Federal Power Commission must do what I&M claims to be impossible, that is, to prove by either tracing or some other unnamed "scientific and engineering proof" that out-of-state energy reaches the wholesale customers. We might recall that even in criminal cases, guilt beyond a reasonable doubt often can be established by circumstantial evidence.

■ We also reject I&M's argument that the facilities used to deliver electric energy to I&M's wholesale customers are "facilities used in local distribution" and that therefore I&M's sales are exempt from Commission jurisdiction under 16 U.S.C. § 824(b) which provides: "* * * The Commission * * * shall not have jurisdiction * * * over facilities * * * used in local distribution or only for the transmission of electric energy in intrastate commerce. * * *" The exemption for local distribution facilities applies to a company's status as a public utility and not as to the Commission's jurisdiction over sales in interstate commerce for resale. Wisconsin-Michigan Power Co. v. Federal Power Commission, 7 Cir., 197 F.2d 472, 477.

We now consider the claim of I&M that the Commission did not afford it a fair hearing.

■ On July 16, 1963, I&M filed applications for *subpoenas duces tecum* and *ad testificandum* to take the depositions of the Chairman, Secretary and a

staff member of the Power Commission. These applications were denied on the basis that under the circumstances present, Commission members were not subject to examination; that data requested was in the public files and was available to I&M, and that the subpoena was a blanket request for data of appropriate persons, studies and analyses which were the bases underlying the issues of the order to show cause which initiated this proceeding. Particular documents were not identified or specified.

On August 30, 1963, I&M sued in the District Court for the Northern District of Indiana, for mandamus and for an injunction to stay proceedings and compel the granting of discovery. The complaint was dismissed for want of jurisdiction. Indiana & Michigan Electric Co. v. Federal Power Commission, 224 F.Supp. 166. The appeal from that order was dismissed.

We hold that the procedural objections of I&M are without merit, and that the various rulings of the Commission objected to by I&M did not result in that Company being denied a fair hearing.

The orders of the Federal Power Commission here in issue are

Affirmed.

KNOCH, Circuit Judge (dissenting).

I must respectfully dissent from the majority. It seems to me that we must find some substantial scientific or engineering evidence that the out-of-state energy did in fact flow to the Indiana sales in issue; that the circumstantial evidence on which the Commission and the majority rely is insufficient to justify taking the regulation of the Indiana sales in question out of the hands of the long-established state authority. I am also inclined to agree with Judge Eschbach (Indiana & Michigan Electric Co. v. Federal Power Commission, D.C., N.D., Indiana, 1963, 224 F.Supp. 166, 170) "that the record in the instant case constitutes an alarming example of how a private litigant before an administrative agency may be denied the opportunity to pursue the orderly procedures so vital to our traditional notions of fair play."

I would reverse the order of the Commission and remand the case with instructions to enter a dismissal for want of jurisdiction.