**PUBLIC SERVICE COMPANY OF INDIANA, INC., Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

No. 15654.

United States Court of Appeals Seventh Circuit.

Jan. 13, 1967.

Certiorari Denied May 29, 1967.

See 87 S.Ct. 2054.

Cameron F. MacRae, New York City, Paul G. Jasper, Plainfield, Ind., for petitioner.

Richard A. Solomon, Federal Power Commission, Israel Convisser, Atty., Washington, D. C., for respondent.

Before KILEY, FAIRCHILD and CUMMINGS, Circuit Judges.

KILEY, Circuit Judge.

The question raised by this petition to review is whether the Federal Power Commission has power to regulate the rates charged by the Public Service Company of Indiana (PSCI) in sales to its municipal and cooperative customers. The Commission order asserted jurisdiction under section 201(b) of the Federal Power Act.[1] We deny the petition and affirm the order.

PSCI, a public utility and Indiana corporation with its principal office in Plainfield, Indiana, operates entirely within Indiana, doing business in 69 of the 92 counties but serving only large rural areas and Indiana's smaller cities. It owns and operates five steam generating plants and has extensive power lines able to transmit large "blocks of power" to all parts of its system. It is interconnected with six other public utilities at points within Indiana or at the state line. Three of these utilities serve areas outside Indiana.[2] The sales in issue have been regulated by Indiana's Public Service Commission "for many years."

[1] 49 Stat. 847–848 (1935), 16 U.S.C. § 824(b) (1964).

[2] Indiana and Michigan Electric Company serves both Indiana and Michigan, and its interconnection with PSCI is within Indiana. The other two utilities, interconnected at the state line, are Louisville Gas and Electric Company (Kentucky) and Cincinnati Gas and Electric Company (Ohio). After the hearings closed

The order on appeal resulted from a proceeding initiated by a Commission order directing an investigation and public hearing to determine mainly whether PSCI's sales to Municipal Electric Systems (Municipals) and Rural Electric Membership Corporations (RE MCs) were sales at wholesale in interstate commerce.[3] The Presiding Examiner found that PSCI sold out-of-state energy at wholesale to Municipals and REMCs from a power pool or coordinated multi-state electric network and recommended substantially the order which the Commission eventually entered upon adopting the Examiner's findings.

The Commission found that PSCI was interconnected with a single multi-state integrated electric power system and that PSCI's sales to its municipal and cooperative consumers were sales at wholesale in interstate commerce. This finding is vital to the Commission's jurisdiction and is the principal target of PSCI's contentions.

The ultimate finding of the Commission upon which it asserted jurisdiction is substantially that PSCI's interconnections with other public utilities locates it in a "large power pool" from which PSCI receives "large quantities" of out-of-state energy resulting in "pool sales" subject to Commission regulation.

PSCI contends that there is no substantial basis in the record for the conclusion that its sales were in interstate commerce because the Commission did not employ point-to-point tracing studies as in many previous cases. The Commission's test, it argues, was an arbitrary nonscientific "power pool" test, instead of the "engineering and scientific" test stated by the Supreme Court in Connecticut Light & Power Co. v. F. P. C., 324 U.S. 515, 65 S.Ct. 749, 89 L.Ed. 1150 (1945), and F. P. C. v. Southern Cal. Edison Co., 376 U.S. 205, 84 S.Ct. 644, 11 L.Ed.2d 638 (1964) (the Colton

case). In Connecticut, the Court said that federal jurisdiction followed an "engineering and scientific" test rather than a "legalistic or governmental" test, pointing out that "if any part of a supply of electric energy comes from outside of a state it is, or may be, present in every connected distribution facility." 324 U.S. at 529, 65 S.Ct. at 756. In context, this statement emphasized the potential reach of federal jurisdiction and demonstrated the need for enforcing the local distribution facilities exception to reconcile the claims of federal and local government. The Court did not discuss the meaning of the "engineering and scientific" test.

■ In Colton, however, the Supreme Court applied the test in holding that there was substantial evidence to support FPC jurisdiction over the sales involved there (by a conceded public utility). 376 U.S. at 209, n. 5, 84 S.Ct. 644. Tracing had been used in that case and was relatively easy, since the sales involved were made to one customer. We are not persuaded that Colton and Connecticut are applicable to rule out use by the FPC of the so-called "power pool" test on the record before us. Scientific evidence can be circumstantial as well as direct.

The use of the "power pool" test was approved in both Indiana & Mich. Elec. Co. v. F. P. C., 365 F.2d 180 (7th Cir. 1966) (I & M), cert. denied, 385 U.S. 972, 87 S.Ct. 509, 17 L.Ed.2d 435 (Dec. 6, 1966), and Arkansas Power & Light Co. v. F. P. C., 368 F.2d 376, 8th Cir., Nov. 7, 1966. In I & M, this court said: "We think the Commission was justified in holding that the important consideration in determining jurisdiction here is the integrated interstate pool character of the operation." 365 F.2d at 184. And in Arkansas, the court said it was not prepared to say that "detailed tracing studies are a sine qua non" to federal

in December, 1964, PSCI interconnected with a seventh public utility, Central Illinois Public Service Company.

3. During 1963 21% of PSCI's distributed power was sold to Municipals and REMCs.

Revenue from these sales in 1963 and in each of the several years prior to 1963 was approximately 11% of total revenue.

jurisdiction, where there is an interstate "pool assist" operation.

■ It is true, as the Commission found, that there are "obvious differences" between the case before us and *I & M* and *Arkansas,* in that they both "involved corporate control and centralized operation." But the distinctions which PSCI seeks to make between its operation and the operations in those two cases are not persuasive. They presuppose that PSCI is an "independent, non-affiliated electric utility which is not a member of a power pool." This presupposition flies in the face of the uncontrovertible fact that PSCI is interconnected in the same interstate network to which I & M and Arkansas Light & Power are connected. Within that network, there are several more highly integrated "power pools," one of which includes PSCI. Its participation in this pool by virtue of its interconnections, even though only for economy and emergency purposes, results in the introduction of a substantial amount of out-of-state energy into PSCI's system.[4]

■■ Under the Federal Power Act the findings of the commission as to the facts, if supported by substantial evidence on the record as a whole, are conclusive. Federal Power Act § 313(b); [5] F. P. C. v. Southern Cal. Edison Co., 376 U.S. at 209, n. 5, 84 S.Ct. 644. The proof in the record before us is sufficient to support an inference, to a reasonable scientific certainty, that interstate energy entered all of the sales in question and commingled with PSCI-generated energy. Thus, we hold that the Commission did not err in asserting jurisdiction over PSCI's sales to the Municipals and REMCs. Pennsylvania Water & Power Co. v. F. P. C., 343 U.S. 414, 420, 72 S.Ct. 843, 96 L.Ed. 1042 (1952); Arkansas Power & Light Co. v. F. P. C., supra; Indiana & Mich. Elec. Co. v. F. P. C., 365 F.2d at 184; Wisconsin-Michigan Power Co. v. F. P. C., 197 F.2d 472, 478 (7th Cir. 1952), cert. denied, 345 U.S. 934, 73 S.Ct. 794, 97 L.Ed. 1362 (1953). There are three reasons for our conclusion: PSCI's interstate interconnections bring it into virtually the same multi-state system, with the same physical properties, that this court in *I & M* thought justified the Commission's finding that the resulting "pool sales" were in interstate commerce.[6] Second, there is a lack of practical availability of facilities for tracing interstate energy into each PSCI

---

4. The Commission rejected the contention that the net flow of energy into the system (0.1% of PSCI's total energy requirements) was controlling in determining the existence of out-of-state energy in the sales to the Municipals and REMCs. We think this was a permissible administrative interpretation of the Act, especially in view of the benefits accruing to PSCI under the pooling arrangement. Cf. Pennsylvania Water & Power Co. v. F.P.C., 343 U.S. 414, 420, 72 S.Ct. 843, 96 L.Ed. 1042 (1952). These benefits include increased reliability, reduced costs and reduction of its "spinning reserve."

5. 49 Stat. 860–861 (1935), as amended, 16 U.S.C. § 825*l* (1964).

6. In the case before us the Commission found:

PSCI argues that we are obliged to show by the tracing methods used in the past that out-of-state energy reaches the physical points of sale involved herein. While there was a difference of opinion between witnesses for PSCI and our staff as to whether it is possible to make such a tracing study, such polemics are now irrelevant in light of our decision in *Arkansas,* supra. As we observed in that case, it is an oversimplication to talk in terms of a flow of electricity from point to point in an integrated power network. Instead, generation from each source in the system contributes directly or indirectly, and to an ever varying extent, to the energy present in all parts of the system which are not isolated from out-of-state sources. This rationale is equally applicable here. There is nothing in this record which establishes that the points of sale at wholesale are isolated from out-of-state sources. On the contrary, the record here demonstrates that the nature of PSCI's system is such that out-of-state energy could, at one time or other, reach all of PSCI's customers during the periods it admittedly was brought into and permeated the backbone transmission system.

sale to Municipals and REMCs.[7] Finally there is confirmatory evidence by Commission expert Jessel illustrating the necessary commingling of energy transmitted into the state with PSCI-generated energy.[8]

We disagree with PSCI that the Commission's decision before us reversed the burden of proof which Congress has placed upon the Commission [9] to establish its jurisdiction by showing that the wholesale sales to the Municipals and REMCs contained out-of-state energy. Indiana & Mich. Elec. Co. v. F. P. C., 365 F.2d at 184. We think that the Commission could find that the FPC Staff met its burden on the record before us.

■ We see no necessity of extensively discussing Jersey Cent. Power & Light Co. v. F. P. C., 319 U.S. 61, 63 S.Ct. 953, 87 L.Ed. 1258 (1943), and Connecticut Light & Power Co. v. F. P. C., 324 U.S. 515, 65 S.Ct. 749, 89 L.Ed. 1150 (1945), in connection with PSCI's contention that jurisdiction over the Company's sales to Municipals and REMCs is reserved to Indiana. The contention has no merit. F. P. C. v. Southern Cal. Edison Co., 376 U.S. at 209, 210, 84 S.Ct. 644.

PSCI argues that because its sales to Municipals and REMCs are effected only through facilities used in local distribution, the Commission has no jurisdiction. The determination of this question involves factual questions and these are original matters for the Commission. F. P. C. v. Southern Cal. Edison Co., 376 U.S. at 210, n. 6, 84 S.Ct. 644. We have found ample evidence in the record to support the Commission finding on this point.

■■ The remaining points argued by PSCI are without merit. The argument based upon Indiana's many years of exercising jurisdiction over company rates was rejected by this court in *I & M:* "[A] history of previously unchallenged" state regulations does not oust the Commission of jurisdiction. 365 F.2d at 183. In Wisconsin-Michigan Power Co., this court rejected the argument that sales to municipalities were exempt. 197 F.2d at 479. And the sales to REMCs are not exempt, because regardless of the character of the cooperatives and members, they are persons within the meaning of section 201(d) of the Federal Power Act.[10] Arkansas Power & Light Co. v. F. P. C., supra.

Affirmed.

---

7. The Commission expert was witness Jessel, Chief of the Division of Electric Resources and Requirements of the FPC. He gave testimony that tracing was neither feasible nor practicable for studying the PSCI system. He testified that the tracing method, even with "enormous advances in techniques," would take one to two years, and if conditions changed during the study, restudy would be needed and result in "making it almost impossible" to conclude the study.

8. Jessell testified from exhibits in evidence how energy received at PSCI's Gallagher generating station is commingled

with energy received from Kentucky and the commingled energy then transmitted to Gallagher's substations, lower substations and lines supplied from these substations. He did the same with respect to energy received from *I & M* and companies in Illinois and Ohio. He concluded that for the hour subject of the tracing, "out-of-state energy permeated the entire system, except possibly" through one substation.

9. 60 Stat. 241 (1946), 5 U.S.C. § 1006(c) (1964).

10. 49 Stat. 848 (1935), 16 U.S.C. § 824(d) (1964).